# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### Assigned on Briefs January 10, 2012

## STATE OF TENNESSEE v. ROBERT EARL GRADY

**Direct Appeal from the Circuit Court for Madison County**
**No. 11-19      Donald H. Allen, Judge**

**No. W2011-02029-CCA-R3-CD  - Filed April 26, 2012**

The defendant, Robert Earl Grady, pled guilty to aggravated burglary, a Class C felony, and theft of property over $1,000, a Class D felony. After a sentencing hearing, he was sentenced to five years in the Department of Correction. On appeal, he argues that the trial court erred in denying him an alternative sentence. Following our review, we affirm the trial court's imposition of a sentence of confinement.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the Court, in which THOMAS T. WOODALL and JOHN EVERETT WILLIAMS, JJ., joined.

George Morton Googe, District Public Defender; and Gregory D. Gookin, Assistant Public Defender, for the appellant, Robert Earl Grady.

Robert E. Cooper, Jr., Attorney General and Reporter; Clarence E. Lutz, Assistant Attorney General; James G. (Jerry) Woodall, District Attorney General; and Shaun A. Brown, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

## FACTS

The defendant was indicted for, and pled guilty to, aggravated burglary and theft of property over $1,000, arising out of his burglary of a residence at 717 Watson Road in Jackson, Tennessee. The facts giving rise to his pleas were recited by the State at the guilty plea hearing as follows:

[On] September 20th, 2010, the victim in this matter, Mr. Charles Morgan,

returned home and found that his home had been burglarized. Several electronic-type items, a camera, television and those type things were stolen from his residence. A screen was cut on the window and entrance made. He reported it to law enforcement. At the time he reported to the sheriff's department that he suspected [the defendant] who stands before the Court. [The defendant] is a neighbor and Mr. Morgan has three dogs inside the home that would attack any stranger and those dogs were unharmed and didn't show any evidence there was any kind of issue with the dogs. So that's why he suspected [the defendant] because [the defendant] was familiar with the dogs. The police began an investigation in this matter and they came in contact with the codefendant, . . . Mr. Webb. Mr. Webb did upon questioning tell law enforcement that [the defendant] had told him that he had taken the television and Mr. Webb helped him dispose of some property, a shotgun and a television. The sheriff's department made contact with a person that Mr. Webb told them the television had been sold to. That person identified [the defendant] as the person who sold him the television. Mr. Webb then told law enforcement that [the defendant] was in a motel here in town. Law enforcement went to that location and made entrance into the room and did discover quite a bit of property that belonged to Mr. Morgan along with [the defendant] who was inside that room.

At the sentencing hearing, the State introduced the defendant's presentence report and then called Charles Morgan, the victim, to testify. The victim testified that his dog was injured during the burglary necessitating a $75 veterinarian bill. In addition, the victim was required to repair a storm window, window glass, and a cable that were damaged during the burglary, as well as repair three door jambs that the defendant had attempted to kick in and furniture that was scratched. The victim related that the defendant had been given lenient sentences as a juvenile but had not changed his behavior. He believed that the defendant injured his dog and summarized that the defendant "does not care about anybody or anything." The victim stated that he would like for the defendant to be incarcerated for him to contemplate his actions and get a GED to better himself through education.

The twenty-one-year-old defendant acknowledged that he had an adult criminal history consisting of a conviction in city court the prior year, as well as two convictions in early 2010 in Lauderdale County. He admitted to having a pending violation of probation against him. He also acknowledged that he had a juvenile criminal history starting at the age of eleven and consisting of convictions for vandalism and two aggravated assaults – for two different occasions when he threatened his mother, once with a knife and once with a bat. The defendant admitted to using marijuana prior to his arrest in this case. He also admitted that he intended to sell all of the items stolen from the victim's home.

-2-

The defendant stated that he was trying to obtain employment at Pictsweet, where his father worked, and that he attended high school until the eleventh grade. The defendant apologized to the victim and maintained that he did not hurt the victim's dog. The defendant promised to "get [his] life straight" and never "do nothing against the law no more."

At the close of the proof, the trial court sentenced the defendant to an effective term of five years and ordered that he serve the sentence in confinement. The court found that the defendant's inability to comply with prior sentences involving release into the community suggested that an alternative sentence would not be effective to rehabilitate him.

## ANALYSIS

The defendant challenges the trial court's imposition of a sentence of confinement. He asserts that his expressions of remorse and willingness to pay restitution, as well as his acceptance of responsibility for his criminal conduct, demonstrate his suitability for an alternative sentence.

When an accused challenges the length and manner of service of a sentence, it is the duty of this court to conduct a *de novo* review on the record "with a presumption that the determinations made by the court from which the appeal is taken are correct." Tenn. Code Ann. § 40–35–401(d) (2010). This presumption is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). The presumption does not apply to the legal conclusions reached by the trial court in sentencing the accused or to the determinations made by the trial court which are predicated upon uncontroverted facts. State v. Butler, 900 S.W.2d 305, 311 (Tenn. Crim. App. 1994); State v. Smith, 891 S.W.2d 922, 929 (Tenn. Crim. App. 1994); State v. Bonestel, 871 S.W.2d 163, 166 (Tenn. Crim. App. 1993), overruled on other grounds by State v. Hooper, 29 S.W.3d 1, 9 (Tenn. 2000).

In conducting a *de novo* review of a sentence, this court must consider (a) any evidence received at the trial and/or sentencing hearing, (b) the presentence report, (c) the principles of sentencing, (d) the arguments of counsel relative to sentencing alternatives, (e) the nature and characteristics of the offense, (f) any mitigating or enhancement factors, (g) any statistical information provided by the administrative office of the courts as to Tennessee sentencing practices for similar offenses; (h) any statements made by the accused in his own behalf; and (i) the accused's potential or lack of potential for rehabilitation or treatment. Tenn. Code Ann. §§ 40-35-103, -210 (2010); State v. Taylor, 63 S.W.3d 400, 411 (Tenn. Crim. App. 2001). The party challenging the sentence imposed by the trial court has the burden of establishing that the sentence is erroneous. Tenn. Code Ann. § 40-35-401 (2010),

Sentencing Commission Cmts.; Ashby, 823 S.W.2d at 169.

Under the revised Tennessee sentencing statutes, a defendant is no longer presumed to be a favorable candidate for alternative sentencing. State v. Carter, 254 S.W.3d 335, 347 (Tenn. 2008) (citing Tenn. Code Ann. § 40-35-102(6)). Instead, the "advisory" sentencing guidelines provide that a defendant "who is an especially mitigated or standard offender convicted of a Class C, D or E felony, should be considered as a favorable candidate for alternative sentencing options in the absence of evidence to the contrary." Tenn. Code Ann. § 40-35-102(6) (2010).

A defendant shall be eligible for probation, subject to certain exceptions, if the sentence imposed on the defendant is ten years or less. Id. § 40-35-303(a) (2010). A defendant is not, however, automatically entitled to probation as a matter of law. The burden is upon the defendant to show that he is a suitable candidate for probation. Id. § 40-35-303(b); State v. Goode, 956 S.W.2d 521, 527 (Tenn. Crim. App. 1997); State v. Boggs, 932 S.W.2d 467, 477 (Tenn. Crim. App. 1996). In order to meet this burden, the defendant "must demonstrate that probation will 'subserve the ends of justice and the best interest of both the public and the defendant.'" State v. Bingham, 910 S.W.2d 448, 456 (Tenn. Crim. App. 1995) (quoting State v. Dykes, 803 S.W.2d 250, 259 (Tenn. Crim. App. 1990)).

There is no bright line rule for determining when a defendant should be granted probation. Bingham, 910 S.W.2d at 456. Every sentencing decision necessarily requires a case-by-case analysis. Id. Factors to be considered include the circumstances surrounding the offense, the defendant's criminal record, the defendant's social history and present condition, the need for deterrence, and the best interest of the defendant and the public. Goode, 956 S.W.2d at 527. Also relevant is whether a sentence of probation would unduly depreciate the seriousness of the offense. See State v. Davis, 940 S.W.2d 558, 559 (Tenn. 1997); Bingham, 910 S.W.2d at 456.

A trial court may deny alternative sentencing and sentence a defendant to confinement based on any one of the following considerations:

(A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;

(B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or

(C) Measures less restrictive than confinement have frequently or recently

been applied unsuccessfully to the defendant.

Tenn. Code Ann. § 40-35-103(1) (2010). Furthermore, the defendant's potential for rehabilitation or lack thereof should be examined when determining whether an alternative sentence is appropriate. Id. § 40-35-103(5).

We conclude that the record before us supports the trial court's imposition of a sentence of confinement. In sentencing the defendant, the trial court noted the defendant's prior criminal history and drug use, as well as that the defendant had been granted probation on at least two different occasions and had violated his probation in two different courts. The court further observed that the defendant committed the present offenses while on probation. The court noted that the defendant accepted responsibility for committing the offenses and expressed some remorse for breaking into the victim's residence. However, the court observed that the defendant maintained he did not know how the victim's dog was injured, which the court did not believe and found such testimony to be untruthful. The court concluded:

> Now, the Court considers the previous actions and character of the defendant. The Court has considered this previous criminal history I've talked about and the Court certainly finds that the defendant has a lack of potential for rehabilitation. He's been given at least two different occasions for rehabilitation and on both occasions after being placed on probation, he's gone out and committed new offenses. So the Court finds that measures less restrictive than confinement have frequently and recently been applied to this defendant without success. Also the Court finds based upon the past behavior of the defendant that it appears that he reasonably would not abide by any terms of probation in this case. So, the Court is going to order him to serve these sentences in the Tennessee Department of Correction[].

The record fully supports the trial court's denial of an alternative sentence based on the past failures of measures less restrictive than confinement and the trial court's assessment of the defendant's lack of potential for rehabilitation.

## CONCLUSION

Based on the foregoing authorities and reasoning, we affirm the trial court's imposition of a sentence of confinement.

_____
ALAN E. GLENN, JUDGE